CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

IVANA DJAK (NYBN 5516687)
Assistant United States Attorney

     1301 Clay Street, Suite 340S
     Oakland, California 94612
     Telephone: (510) 637-3918
     Fax: (510) 637-3724
     Ivana.Djak@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 25-CR-188 JSC |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | |
| SULIS SOTO-ALVARADO, | Court: Hon. Jacqueline Scott Corley |
| Defendant. | Hearing Date: March 11, 2026<br>Hearing Time: 10:00 A.M. |

## I.    INTRODUCTION

On May 19, 2025, the Defendant, Sulis Soto-Alvarado, and her codefendant Martha Alvarado-Rodriguez, were charged by Complaint with 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 based on their possession with the intent to distribute a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl) on or about April 11, 2025, April 16, 2025, and April 29, 2025, in San Francisco, California.  Dkt. No. 1, Complaint.  On July 1, 2025, the Defendant and Alvarado-Rodriguez were charged by Information with Possession with Intent to Distribute Fentanyl on April 29, 2025, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count One), and Possession with Intent to Distribute Methamphetamine on April 29,

UNITED STATES' SENTENCING MEMO      1
25-CR-188 JSC

2025, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count Two).  Dkt. No. 20, Information.  On November 5, 2025, the Defendant pled guilty to both counts of the Information. See Dkt. No. 37; Plea Agreement ("Plea") ¶ 1; Dkt. No. 43, Presentence Report ("PSR") ¶ 2. Sentencing is set for March 11, 2026.

The Defendant's conduct is serious and warrants a substantial term of incarceration.  The Defendant's minor son was present during the Defendant's drug trafficking activity and the Defendant lived with her son at a drug stash house.  PSR ¶¶ 8–30.  The Defendant has been arrested repeatedly in connection to drug trafficking.  *Id.* ¶¶ 49 – 57.

The Defendant has also taken responsibility for the conduct of conviction in this case, expressed remorse, and saved the government substantial resources.

Based on the nature and circumstances of the offense, the Defendant's criminal history, and the Defendant's acceptance of responsibility, the government submits that a custodial sentence of 36-month term of incarceration to be followed by a three-year term of supervised release, is sufficient, but not greater than necessary, to achieve the goals set forth in 18 U.S.C. § 3553(a).

II.    **BACKGROUND**

A. **Offense Conduct**

1. **Controlled Purchase on April 11, 2025**

On April 11, 2025, San Francisco Police Department ("SFPD") officers were conducting surveillance in the area of Golden Gate Avenue and Gough Street in the Tenderloin District in San Francisco related to a drug trafficking investigation.  PSR ¶ 9.

At about 8:30 p.m., officers observed Alvarado-Rodriguez, Soto-Alvarado, and a 15-year-old boy ("D.S."), identified as Soto-Alvarado's son and Alvarado-Rodriguez's nephew, exit a Toyota Rav-4 ("Toyota") bearing license plate number ***D223, in the 900 block of Golden Gate Avenue and walk east.  *Id.* ¶ 10.

At about 9:00 p.m., an undercover officer ("UC-1") walked to the 600 block of McAllister Street when he was approached by Soto-Alvarado, who asked him something to the effect of "what do you need."  *Id.* ¶ 11.  The UC responded "iso," which is a common street name for fentanyl.  Soto-Alvarado

UNITED STATES' SENTENCING MEMO    2                                     v. 2/22/2025
25-CR-188 JSC

then motioned to D.S. who approached the UC and asked, "how much." PSR ¶ 11. The UC said, "thirty" and D.S. then gave the UC a plastic bag containing a white substance in exchange for $30 in U.S. currency. During the transaction, Alvarado-Rodriguez was standing a few feet away and appeared to be overseeing the transaction. *Id.* ¶ 11.

The suspected narcotics tested presumptively positive for the presence of fentanyl and weighed .7 net grams. *Id.* ¶ 12. The suspected drugs were submitted for further testing, and the laboratory tests revealed that the substance was fentanyl. On April 15, 2025, a San Francisco Superior Court Judge issued a tracking device search warrant for the Toyota with California license plate number ***D223.

**2. Controlled Purchase on April 16, 2025**

On April 16, 2025, SFPD officers were conducting surveillance near Golden Gate Avenue when they observed the Toyota parked along the sidewalk and Alvarado-Rodriguez and Soto-Alvarado walking together. PSR ¶ 13.

Once Alvarado-Rodriguez and Soto-Alvarado walked away together and were out of sight, a tracking device was affixed to the Toyota. Another undercover officer ("US-2") walked eastbound on the north sidewalk of McAllister Street towards Franklin Street, to the 600 block of McAllister Street where he located Alvarado-Rodriguez and Soto-Alvarado. *Id.* ¶ 14.

UC-2 walked towards Alvarado-Rodriguez, and he overheard a conversation between Alvarado-Rodriguez and an unknown man who asked her for "20 of iso" and "10 of crack," which is a common street name for cocaine base. UC-2 saw Alvarado-Rodriguez retrieve the suspected narcotics and place them in the unknown man's hand. *Id.* ¶ 15.

UC-2 subsequently approached Alvarado-Rodriguez and asked for "iso." UC-2 handed Alvarado-Rodriguez $40 in U.S. currency and in return she handed the UC several small pieces of a white chalky substance. During the transaction, Soto-Alvarado initially stood next to Alvarado-Rodriguez, but then walked along McAllister Street and looked in all directions as Alvarado-Rodriguez engaged in the drug sales. *Id.* ¶ 16.

The suspected narcotics weighed 2.7 gross grams. The suspected drugs were submitted for further testing, and the laboratory tests revealed that the substance was fentanyl. *Id.* ¶ 17.

UNITED STATES' SENTENCING MEMO    3    v. 2/22/2025
25-CR-188 JSC

### 3. Arrests and Vehicle Search on April 29, 2025

SFPD Officers reviewed the historical data for the tracking device after it was affixed to the Toyota.  For the night of April 16, 2025, the data showed that the Toyota SVU went straight from San Francisco to the area of 38th Ave. and Liese Ave. in Oakland, California, where it remained stationary for the night.  The Toyota SUV was also registered to an address at Liese Ave., in Oakland, which corresponded to the tracking data.  Thereafter SFPD Officers surveilled the apartment building and spotted detained Alvarado-Rodriguez, Soto-Alvarado, and D.S. at the suspected residence.  PSR ¶ 18.

On April 29, 2025, officers had a search warrant authorizing the search of Alvarado-Rodriguez and Soto-Alvarado, the Toyota, and the Oakland residence.  *Id.*  On the night of April 29, officers surveilled the apartment building and observed Alvarado-Rodriguez, Soto-Alvarado, and D.S. exit their apartment, enter the Toyota, and drive away.  Officers followed the Toyota as it headed towards Golden Gate Avenue and Gough Street, and then detained Alvarado-Rodriguez, Soto-Alvarado, and D.S.  *Id.* ¶ 19.

A search of Alvarado-Rodriguez revealed a flip style cellular phone and plastic baggies. Officers then searched the Toyota and found various plastic bags in the floorboards, the back hatch, the cupholders, as well inside a Tommy Hilfiger satchel inside the car, and other areas inside the car which contained suspected fentanyl, suspected cocaine base, and suspected methamphetamine.  A digital scale, packing materials, and two cellular phones were also found. *Id.* ¶ 20.

Alvarado-Rodriguez and Soto-Alvarado were subsequently arrested.  D.S. was transported and booked into the Juvenile Justice Center.  During a search of his person, officers located a digital scale and 19 gross grams of suspected fentanyl that tested inconclusive on the TruNarc device.  *Id.* ¶ 21.

The suspected narcotics found in the Toyota were later weighed and tested and the results were as follows: 4.6 gross grams of suspected methamphetamine, 4.3 gross grams tested presumptive positive for fentanyl, 16.2 gross grams tested presumptive positive for cocaine base, 28.9 gross grams tested presumptive positive for methamphetamine, 62.8 gross grams tested inconclusive for fentanyl; and 6.8 gross grams tested inconclusive for fentanyl.  *Id.* ¶ 22

The suspected drugs were submitted for further testing and the Alameda County Sheriff's Office

Crime Laboratory tests confirmed that substances are each what they were suspected of being, namely fentanyl, methamphetamine, and cocaine base. PSR ¶ 23.

### 4. Search of the Residence on April 29, 2025

That same evening, about 9:30 p.m., officers knocked on the door of the apartment on Liese Avenue, to execute the residential search warrant. The only two occupants of the apartment at the time were Mirza Hanzell Moran-Castro and Maria Valle-Rodriguez, who was on post-conviction release in a federal drug trafficking case in order to seek medical treatment. Valle-Rodriguez was subsequently sentenced to 135 months imprisonment followed by 48 months of supervised release. *See* Case No. 23-CR-501 JSC. Alvarado-Rodriguez acted as a surety in Valle-Rodriguez's case. They were romantic partners at the time. PSR ¶ 24.

Upon knocking on the door, Valle-Rodriguez appeared in the front window, ran away, then shortly after, ran back to the window. Once Valle-Rodriguez opened the door, she and Moran-Castro were detained during a search of the residence. *Id.*

In the kitchen, officers located fast track invoices for the Toyota addressed to "Irene Martha" and other mail addressed to "Martha Alvarado Rodriguez." *Id.* ¶ 25. In the walk-in closet, officers located Honduran passports belonging to D.S. and "Sulis Argentina Soto Alvarado," Honduran and El Salvador passports, U.S. identification cards belonging to miscellaneous individuals, suspected fentanyl, suspected cocaine base, and $355 in U.S. currency located in items that appeared to belong to Soto-Alvarado. *Id.* ¶ 26.

In the bathroom, officers found a plastic bag containing suspected fentanyl, suspected cocaine base, a digital scale, packaging material for narcotics sales, a cutting board with white residue, pliers containing white residue, and a razor. *Id.* ¶ 27.

Inside the bedroom belonging to Alvarado-Rodriguez, officers located the same purse they saw Alvarado-Rodriguez previously wearing, suspected cocaine base, personal items, and two cellular phones belonging to Valle-Rodriguez. Officers also found $4,196 in U.S. currency located in Valle-Rodriguez's wallet and $5,472 in U.S. currency scattered throughout the bedroom. *Id.* ¶ 28.

The suspected narcotics seized from the residence were later tested and weighed, and the results

were as follows: 2.2 grams tested presumptive positive for fentanyl; 62.0 grams tested inconclusive for fentanyl, 8.9 grams tested presumptive positive for methamphetamine; 9.8 grams tested presumptive positive for cocaine base; 15.9 grams tested presumptive positive for cocaine base; and 1.0 gram of suspected fentanyl that tested "ephedrine cannot rule out presence of narcotic direct." *Id.*¶ 29.   The suspected drugs were submitted for further testing, and the tests revealed that substances are each what they were suspected of being, namely fentanyl, methamphetamine, and cocaine base. *Id.* ¶ 30.

## B. Defendant's Prior Drug Trafficking Arrests

In February 2021 and August 2020, Soto-Alvarado was arrested for, among other things, transporting and selling narcotics, in San Francisco.  In June 2020, Soto-Alvarado was arrested for, among other things, possession of cocaine base for sale in San Francisco.  In September 2019, she was arrested for entry into the United States without inspection.  PSR ¶¶ 49 – 57.

## III.    PROCEDURAL HISTORY

On May 19, 2025, the Defendant and her codefendant were charged by Complaint with 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2 based on their possession with the intent to distribute a mixture and substance containing a detectable amount of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide (fentanyl) on or about April 11, 2025, April 16, 2025, and April 29, 2025, in San Francisco, California.  Complaint.  On July 1, 2025, the Defendant and Alvarado-Rodriguez were charged by Information with Possession with Intent to Distribute Fentanyl on April 29, 2025, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count One), and Possession with Intent to Distribute Methamphetamine on April 29, 2025, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 18 U.S.C. § 2 (Count Two).  Information.  On November 5, 2025, the Defendant pled guilty to both counts of the Information.  Plea; PSR. Sentencing is set for March 11, 2026 at 10:00 a.m.

## IV.    SENTENCING GUIDELINES CALCULATION

The parties agreed to a plea agreement resulting in an adjusted offense level of 21.  The calculation is as follows: Base Offense Level 24 pursuant to U.S.S.G. § 2D1.1(c)(8); a two-level increase for using a minor to commit a crime, pursuant to U.S.S.G. § 3B1.4; a two-level reduction for Zero Point Offender adjustment, pursuant to U.S.S.G. § 4C1.1, and a three-level reduction for

Acceptance of Responsibility, pursuant to U.S.S.G. § 3E1.1, for a Total Offense Level of 21.  *See* Plea ¶ 7; PSR ¶¶ 34– 45.

The Defendant has a criminal history score of zero, which results in a criminal history category of I.  PSR ¶ 50.

Based on a total offense level of 21 and a CHC of I, the guideline range is 37 to 46 months.

The parties agreed to a term of 36 months' incarceration to be followed by three years of supervised release. *See* Plea¶ 8.  This represents a three percent downward variance from the low end of the guideline range.  Probation recommends the same term.  *See* PSR Recommendation.

## V.    APPLICABLE LAW

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Guidelines.  *Id.*  After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a).  *Id.* at 991–93.

Under 18 U.S.C. § 3553(a), in arriving at the appropriate sentence for the defendant, the Court should consider these factors applicable to this case, among others:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3)    the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4)    the need for the sentence to protect the public from future crimes of the defendant;

(5)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(6)    the need to provide restitution to any victims of the offense.

## VI.    RECOMMENDED SENTENCE AND SECTION 3553(a) FACTORS

Based upon a consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the government respectfully recommends a custodial sentence of 36 months to be followed by a three-year term of supervised release, commensurate with an Adjusted Offense Level of 21, a CHC I, and slight downward variance from the low end of the guideline range.

The nature and circumstances of the Defendant's offense are serious.  The Defendant dealt drugs in the Tenderloin in the presence of her minor son.  She saw her son handling drugs.  She lived at a stash house with her son.  The Defendant has also repeatedly been arrested in San Francisco for drug trafficking activity.  A significant term of incarceration is warranted.

It is also true that the Defendant has taken responsibility for the offense conduct.  The Defendant saved the government substantial resources by accepting responsibility.

A custodial sentence of 36 months' custody to be followed by three years of supervised release is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553.

DATED:  March 4, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

/S/
_____

Ivana Djak
Assistant United States Attorney